IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Steven A. Sabo,                          )
    Petitioner,                          )    Case No. 8:11-cv-02681-JMC-JDA
                                          )
     v.                               )    **REPORT AND RECOMMENDATION**
                                          )    **OF MAGISTRATE JUDGE**
Robert M. Stevenson, III,                )
    Respondent.                          )
_____)

    This matter is before the Court on Respondent's motions for summary judgment.
[Docs. 29, 38.] Petitioner is a state prisoner who seeks relief pursuant to Title 28, United
States Code, Section 2254. Pursuant to the provisions of Title 28, United States Code,
Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is
authorized to review post-trial petitions for relief and submit findings and recommendations
to the District Court.

    Petitioner filed this Petition for writ of habeas corpus on October 3, 2011.[1] [Doc. 1.]
On January 26, 2012, Respondent filed a motion for summary judgment and a return and
memorandum. [Docs. 29, 30.] On January 27, 2012, in accordance with an Order
pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), Petitioner was advised to
respond to the motion for summary judgment and of the possible consequences if he failed
to respond adequately to Respondent's motion. [Doc. 33.] On February 10, 2012,
Petitioner filed an Amended Petition, asserting additional grounds for relief. [Doc. 35.]
Respondent filed a motion for summary judgment and a return and memorandum to the

---

[1] The Petition is considered filed at the moment it is delivered to prison authorities for forwarding to
the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the possible filing dates
in the light most favorable to Petitioner, this action was filed on October 3, 2011. [Doc. 1-2 (envelope marked
received by the prison mailroom on October 3, 2011).]

Amended Petition on February 17, 2012.  [Docs. 38, 39.]  On February 21, 2012, another *Roseboro* Order was filed, advising Petitioner to respond to the motion for summary judgment and of the possible consequences if he failed to respond adequately to Respondent's motion.  [Doc. 41.]  On March 26, 2012, Petitioner's response was filed [Doc. 49], and on April 4 and 5, 2012, Respondent filed replies [Docs. 51, 52].  Having carefully considered the parties' submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is currently incarcerated in the Ridgeland Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Lexington County.[2] [Doc. 26 at 3 (indicating a change of address); *see* App. 41.[3]]  At the April 2004 term of General Sessions, the Richland County Grand Jury indicted Petitioner on nine counts of armed robbery and one count of entering a bank with the intent to steal.  [App. 42–61.]  On October 11, 2005, Petitioner entered a guilty plea before the Honorable G. Thomas Cooper, Jr.  [App. 1–41.]  Petitioner was represented by Hans Pauling.  [App. 1.]  Specifically, Petitioner pled guilty to one count of armed robbery and to entering a bank with the intent to steal [App. 5–6] and pled guilty to the remaining eight

---

[2]At the time Petitioner filed his Petition, he was incarcerated in the Broad River Correctional Institution. [Doc. 1 at 1.]

[3] The Appendix can be found at Docket Entry Numbers 30-1 through 30-2.

counts of armed robbery pursuant to *North Carolina v. Alford*[4] [App. 7–8]. These eight counts of armed robbery all related to robberies at various convenience stores. [App. 19–21.] Petitioner was sentenced to concurrent terms of twenty years commitment on each of the charges.[5] [App. 41.]

**Direct Appeal**

Petitioner, represented by Joseph L. Savitz, III ("Savitz"), of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, appealed his convictions and sentences to the South Carolina Court of Appeals. [Doc. 30-3.] Petitioner raised one issue in an *Anders* brief[6]:

> The judge erred by advising Sabo that he could appeal his guilty pleas "if you disagree with the sentence I give you or the procedure we just completed," since this advice rendered the plea conditional and thus invalid in South Carolina.

[*Id.* at 4.] At the same time he filed the *Anders* brief, Savitz submitted a petition to be relieved as counsel. [*Id.* at 7.] In response to a letter advising Petitioner of his right to file a pro se brief [Doc. 30-4], Petitioner submitted a pro se brief [Doc. 30-5]. In his pro se brief, Petitioner submitted the following issues, quoted substantially verbatim:

Issue A:     <u>Was the plea conditional</u>?

<u>The Judge erred by advising Steven A. Sabo that he could appeal his guilty plea "if you disagree with the sentence I give you or the procedure we just</u>

---

[4] In *North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970), the Supreme Court explained that a criminal defendant may simultaneously plead guilty and contest his innocence—that is, enter into a plea agreement without admitting guilt.

[5] Petitioner's probation on other charges was also revoked. [App. 33–35, 41.] Petitioner does not challenge the revocation in this action. [*See* Doc. 1 at 1.]

[6] A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

completed," since this advice rendered the plea conditional and thus invalid in South Carolina. Prior to accepting Steven A. Sabo's plea, the judge advised him that he could appeal "if you disagree with the sentence I give you or the procedure we just completed." Steven A. Sabo indicated that he was pleading guilty with that understanding.

Issue B:     Due Process violated.

Three (3) times Steven A. Sabo was transported to Court to be told his case had been "Continued", and neither witnesses for the State, Law Enforcement personnel, nor Steven A. Sabo's attorney were present for his requested "Preliminary Hearing." Dates transported are: April 5, 2004, April 26, 2004 (City), and April 29, 2004 (County). Defendant Steven A. Sabo never received a Preliminary Hearing (which he requested) which is unlawful, as is stated in cases . . . .

Issue C:     "Prosecutorial Misconduct"
             Prejudiced and Biased

On April 19, 2004, 5th Circuit Assistant Solicitor Kathryn Luck Campbell lied to bond Court Judge (Later to be sentencing Judge) G. Thomas Cooper when she said a gun was found in Defendant's home during a search warrant. Because of a prior sexual relationship between Solicitor Campbell and Defendant, Solicitor Campbell had defendant served with "Life without Parole" papers.

On December 15, 2004, Judge G. Thomas Cooper removed Solicitor Campbell from defendant's case due to this "Conflict of Interest," thus causing the 5th Circuit Solicitor's office in Richland County to become "Prejudiced and Biased" towards defendant, making it impossible for defendant's newly appointed attorney "Hans Pauling" to be "Effective" to successfully negotiate any type of a plea bargain or to arrange for a necessary "Preliminary Hearing" or a "Change of Venue," with prosecuting Solicitor's John Meadors and Will Bryant. This case should have had a "Change of Venue" in another County with different "Unbiased and Non-Prejudicial Solicitors."

Issue D:     Ineffective Counsel

Court appointed attorney "Hans Pauling" related to Defendant there was no choice but to plead guilty or Defendant would receive a sentence of Life without Parole. Defendant was told by attorney Pauling that in a Jury trial the Defendant would lose and receive Life Without Parole. Defendant was coerced while under "extreme duress", and also on Medication for "Anti-Depressants" for an Anxiety Disorder to plead guilty to charges this Defendant is not guilty to.

Directly <u>prior</u> to sentencing, Attorney told Defendant to plead guilty under "<u>N.C. v. Alford</u>", which this Defendant wasn't given any preparation to view or research prior to sentencing. Defendant asked Attorney Pauling to have a Preliminary Hearing held and Attorney Pauling said "Preliminary Hearings" don't matter. Attorney Pauling wouldn't negotiate a "Bond Hearing" or a "Change of Venue" after this Defendant was subjected to extensive "negative" T.V. and Newspaper publicity.

Defendant was tried and convicted in the news media, even prior to a Bond Hearing where Defendant was denied Bond with no attorney present on March 16, 2004. Attorney Pauling failed to negotiate a reasonable sentence <u>prior</u> to sentencing, even though attorney Pauling admitted to this Defendant that he knew by looking at the Incident Reports and surveillance photos that this Defendant was <u>not guilty</u> of several of the charges. Attorney Pauling did <u>not</u> object when Judge Cooper stated, "If you disagree with this sentence I give you or the procedure we just completed."

Issue E:       "Change of Venue"

[*Id.* at 6–12 (emphases in original) (internal citations omitted).]

On October 30, 2007, an opinion was filed, dismissing the appeal and granting Savitz's motion to be relieved. [Doc. 30-6.] Petitioner filed a petition for rehearing, dated November 5, 2007 [Doc. 30-7], which was denied on December 27, 2007 [Doc. 30-8]. Remittitur was issued on January 31, 2008. [Doc. 30-9.]

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on February 26, 2008. [App. 72–98.] In his application, Petitioner alleged the following grounds, which Petitioner labeled as "issues," quoted substantially verbatim:

Issue A:       <u>Was the plea conditional</u>?

<u>The Judge erred by advising Steven A. Sabo that he could appeal his guilty plea "if you disagree with the sentence I give you or the procedure we just completed," since this advice rendered the plea conditional and thus invalid in South Carolina</u>. Prior to accepting Steven A. Sabo's plea, the judge advised him that he could appeal "if you disagree with the sentence I give you or the procedure we just

completed." Steven A. Sabo indicated that he was pleading guilty with that understanding.

<u>Issue B</u>:        <u>Due Process Violation</u>.

Three (3) times Steven A. Sabo was transported to Court to be told his case had been "<u>Continued</u>", and neither witnesses for the State, Law Enforcement personnel, nor Steven A. Sabo's attorney were present for his requested "<u>Preliminary Hearing</u>." Dates transported are: April 5, 2004, April 26, 2004 (City), and April 29, 2004 (County). Defendant Steven A. Sabo <u>never received</u> a Preliminary Hearing (<u>which he requested</u>) which is unlawful, as is stated in cases . . . .

<u>Issue C</u>:        "<u>Prosecutorial Misconduct</u>",
               <u>Prejudiced and Biased</u>.

On April 19, 2004, 5th Circuit Assistant Solicitor Kathryn Luck Campbell <u>lied</u> to bond Court Judge (Later to be sentencing Judge) <u>G. Thomas Cooper</u> when she said a gun was found in Defendant's home during a search warrant. Because of a prior sexual relationship between Solicitor Campbell and Defendant, Solicitor Campbell had defendant served with "Life without Parole" papers.

On December 15, 2004, <u>Judge G. Thomas Cooper</u> removed Solicitor Campbell from defendant's case due to this "Conflict of Interest," thus causing the 5th Circuit Solicitor's office in Richland County to become "<u>Prejudiced and Biased</u>" towards defendant, making it impossible for defendant's newly appointed attorney "Hans Pauling" to be "Effective" to successfully negotiate any type of a plea bargain or to arrange for a necessary "<u>Preliminary Hearing</u>" or a "<u>Change of Venue</u>," with prosecuting Solicitor's John Meadors and Will Bryant. This case should have had a "<u>Change of Venue</u>" in another County with different "<u>Unbiased and Non-Prejudicial Solicitors</u>."

<u>Issue D</u>:        <u>Ineffective Counsel</u>

Court appointed attorney "<u>Hans Pauling</u> related to Defendant there was no choice but to plead guilty or defendant would receive a sentence of Life Without Parole. Defendant was told by attorney Pauling that in a Jury trial the Defendant would lose and receive life without Parole. Defendant <u>coerced</u> while under "<u>extreme duress</u>", and also on <u>Medication</u> for "<u>Anti-Depressants</u>" for an <u>Anxiety Disorder</u> to plead guilty to charges this Defendant is <u>not guilty</u> to.

Directly <u>prior</u> to sentencing, Attorney told Defendant to plead guilty under "<u>N.C. v. Alford</u>", which this Defendant wasn't given any preparation to view or research prior to sentencing. Defendant asked Attorney Pauling to have a Preliminary Hearing held and Attorney Pauling said ""Preliminary Hearings" don't

matter".  Attorney Pauling wouldn't negotiate a "Bond Hearing" or a "Change of Venue" after this Defendant was subjected to extensive "negative" T.V. and Newspaper publicity.

Defendant was tried and convicted in the news media, even prior to a Bond Hearing where Defendant was denied Bond with no attorney present on March 16, 2004.   Attorney Pauling failed to negotiate a reasonable sentence <u>Prior</u> to sentencing, even though attorney Pauling admitted to this Defendant that he knew by looking at the Incident Reports and surveillance photos that this Defendant was <u>not guilty</u> of several of the charges.  Attorney Pauling did <u>not</u> object when Judge Cooper stated, "If you disagree with this sentence I give you or the procedure we just completed."

Issue E:      <u>"Change of Venue"</u>

<u>ISSUE F</u>
<u>FACTS OF THE CASE</u>

\*\*\*

[App. 78–97 (emphases in original) (internal citations omitted).]  Petitioner also moved to have counsel appointed.  [App. 99.]  The State made a return to the PCR application on January 5, 2009.  [App. 105–08.]  Subsequently, Petitioner, represented by Jeremy A. Thompson, filed an amended PCR application, raising the following specific allegations of ineffective assistance of counsel:

1)      Defense counsel was ineffective for advising the Applicant to accept a plea deal where he pleaded guilty to several charges under <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), but where the Applicant was forced to admit guilt on the most serious charges against him;

2)      The Applicant's pleas of guilty were not knowingly, voluntarily, or intelligently entered inasmuch as they were entered with the belief that he was pleading guilty to all charges pursuant to <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970);

3)      Defense counsel was ineffective for failing to contact and interview potential witnesses for the defense;

4)      The Applicant's pleas of guilty were not knowingly, voluntarily, or intelligently entered inasmuch as they were entered under the mistaken belief that defense counsel had fully investigated his case;

5)      Defense counsel was ineffective for failing to advise the Applicant that he could challenge the validity of the search of his home conducted by the police in his case;

6)      The Applicant's pleas of guilty were not knowingly, voluntarily, or intelligently entered inasmuch as they were entered without the knowledge that he could raise a Fourth Amendment challenge to the search procedures used in this case.

[App. 102–03.]  On February 23, 2009, the PCR court held an evidentiary hearing into the matter.  [App. 110–81.]  Thereafter, on April 24, 2009, Petitioner filed a memorandum of law in support of the grant of post-conviction relief.  [App. 182–98.]

On May 26, 2009, the PCR court issued its decision, denying and dismissing with prejudice Petitioner's PCR application.  [App. 201–13.]  In its order of dismissal, the PCR court listed the issues raised in the amended PCR application and also stated Petitioner raised the following related allegations at the PCR hearing:

7      Defense counsel was ineffective for failing to advise the Applicant that he could not be sentenced to life without parole for the bank charge;

8      The Applicant's pleas of guilty were not knowingly, voluntarily, or intelligently entered inasmuch as they were entered without the knowledge that he could not be sentenced to life without parole upon conviction for the bank charge;

9      Defense counsel was ineffective for failing to advise the Applicant how he could use the discrepancies in the State's case to his benefit at trial;

10      The Applicant's pleas of guilty were not knowingly, voluntarily, or intelligently entered inasmuch as they

were entered without the knowledge of how to utilize the discrepancies in the State's evidence for his defense at trial;

11    Defense counsel was ineffective for failing to advise the Applicant what his available defenses would be if he proceeded to trial;

12    The Applicant's pleas of guilty were not knowingly, voluntarily, or intelligently entered inasmuch as they were entered without the knowledge of how to challenge the State's evidence or how to present defenses at trial.

[App. 203.]  The PCR court addressed the issues and went on to state:

> Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application.  Counsel was not deficient in any manner, nor was Applicant prejudiced by counsel's representation.  Therefore, this application for post conviction relief must be denied and dismissed with prejudice.

[App. 212.]  Petitioner subsequently filed a motion to alter or amend on June 11, 2009.

[App. 214–17.]  On July 22, 2009, the PCR court denied and dismissed the motion to alter or amend.  [App. 220–21.]

On April 23, 2010, Kathrine H. Hudgins, Appellate Defender for the South Carolina Commission on Indigent Defense, filed on Petitioner's behalf a petition for writ of certiorari in the South Carolina Supreme Court.  [Doc. 30-10.]  The petition asserted the following issues:

1.    Did the PCR judge err in failing to find counsel ineffective for failing to discuss with petitioner the fact that a witness had i[]dentified a third person as the suspect in the armed robberies for which petitioner pled guilty?

2.    Did the PCR judge err in failing to find counsel ineffective for failing to explain that at trial petitioner

> could have moved to suppress the identifications of
> petitioner made by the bank tellers based on the fact
> that the identifications were made after the news of
> petitioner's arrest and petitioner's booking photograph
> had been broadcast on television rendering the
> identification procedure unduly suggestive?

[*Id.* at 3.]  The State made a return to the petition on June 30, 2010.  [Doc. 30-11.]  The

court denied the petition on August 4, 2011 [Doc. 30-12] and remitted the matter to the

lower court on August 23, 2011 [Doc. 30-13].

**Federal Habeas Petition**

As previously stated, Petitioner filed a Petition [Doc. 1] and an Amended Petition

[Doc. 35].   In his Petition, Petitioner raises the following grounds for relief, quoted

substantially verbatim:

**Ground One**:            Did the "PCR" judge err in failing to find counsel ineffective for
                           failing to discuss with Petitioner the fact that a witness had
                           identified a third person as the suspect in the armed robberie[]s
                           for which petitioner pled guilty.

*Supporting facts*:        Sentencing Attorney "Pauling" never discussed with this
                           petitioner that an Eyewitness had identified a "Third Person",
                           and filed an Eyewitness Report with Police.  This Eyewitness
                           and Eyewitness Report was "never" made known to this
                           petitioner prior to sentencing.  Solicitor's Office did "not" put
                           this "Eyewitness Report" in with "Discovery – Material" that was
                           given to Petitioner prior to Sentencing.

**Ground Two**:            Failure to explain that Petitioner could move to "Suppress
                           Identification".

*Supporting Facts*:        Did the PCR-Judge err in failing to find counsel ineffective for
                           failing to explain that at trial petitioner could have moved to
                           suppress the identifications of petitioner made by bank tellers
                           based on the fact that the identification[]s were made "after" the
                           news of petitioner's arrest and petitioner's booking photograph
                           had been broadcast on television rendering the identification
                           procedure "Unduly Suggestive".

| **Ground Three**: | Solicitor Meadows Statement of "Time-Frame" - vs - Mr. Mike Coutsos statement of "Time-Frame" of this Petitioner's actual whereabouts. |
|---|---|
| *Supporting facts*: | (Sentencing Transcripts:) Solicitor Meador states: "About quarter til or ten til five" as to when Bank Teller[]s said the time of Robbery oc[c]urred |
| | (PCR-Transcript[]s) Eyewitness Mr. Mike Coutsos state[]s . . . "So he stood outside and used the phone between 4:30 and 5:00. He got there between 1 and 1:30 and about close to 4:30 that afternoon. How far away would you say that was from your business? I would say a couple of miles. A couple of miles? Now you know Steve pretty well. How quick did he walk? He don't get in no hurry to go nowhere. Do you think Mr. Sabo could have made it from your business at say 5:00 . . . " |

[Doc. 1 at 5–8 (internal citations omitted).] In his Amended Petition, Petitioner added the following grounds for relief, quoted substantially verbatim:

| **Ground One**: | The Petitioner was provided with ineffective assistance of counsel before and at the plea hearing in violation of the Sixth and Fourteenth Amendment to the U.S. Constitution and the mandatory precedent established through <u>Strickland v. Washington</u>. |
|---|---|
| *Supporting facts*: | Court appointed counsel failed to properly investigate, advise, or subject the State's case to an aggressive adversarial testing exemplified through numerous progeny decisions of <u>Strickland v. Washington</u>. Specifically counsel failed to challenge the eyewitness and video identifications, possible Fourth Amendment violations, failed to develop a defense, failed to prepare as if going to trial, failed to advise Petitioner of what the State would need to prove to get a conviction, counsel failed to specifically determine whether S.C. Code § 17-25-45 could be applied, based on the evidence, allowed Petitioner to plea to indictments that he clearly knew Petitioner did not do and State lacked ability in which to prosecute, failed to explain the significance of a Franks or Denno pre-trial hearing, failed to raise an alibi defense, and failed to raise and bring to Petitioner's attention possible third party guilty and how it could be used as a defense. |

**Ground Two**:                    The Petitioner's Alford and guilty pleas were neither knowingly, intelligently, nor voluntarily given based on the provisions established in the mandatory precedent of <u>Boykin v. Alabama</u> and <u>North Carolina v. Alford</u> and <u>Hill v. Lockhard</u>, and their progeny, and the Fifth and Fourteenth Amendment to the U.S. Constitution.

*Supporting facts*:                Court appointed counsel failed to advise the Petitioner of the implication of neither his Alford nor his guilty plea, was not advised how to challenge the State's evidence or how defense would be presented at trial, was not advised properly about sentencing scenarios regarding the bank charges and his previous convictions, was not advised that the armed robbery part of the bank charge may have lacked mens rea, was under the mistaken belief that counsel had investigated the case as if going to trial, was not advised about the possibility of suppression of evidence or identification, was not advised of a possible alibi defense, and Petitioner was confused by counsel's inability to explain the ramifications of his plea to the convenience store robberies where significant ambiguities existed. The Petitioner was also not aware that the State had allowed a Receiving Stolen Property charge to stay un-heard at the plea hearing.

**Ground Three**:                  The Petitioner was denied Due Process through prosecutorial misconduct in violation of the Fourteenth Amendment to the U.S. Constitution and the mandatory precedent established through <u>D.A. v. Osborne</u>, 129 S.Ct. 2308, 2319 (2009), <u>In re Richland County Magistrate's Court</u>, 699 SE2d 161 (SC 2010).

*Supporting facts*:                Before trial during a bond reduction hearing, it was brought to the Bond Court's attention of a relationship that had been between the prosecuting solicitor and the Petitioner. The Court later severed that solicitor from the case. After that the solicitor's office prejudiced the case when it chose to, out of vindictiveness, drop all of the convenience stores robberies on the Petitioner. Then denied the Petitioner a Preliminary hearing, or a Motion for change of venue after both were requested by the Petitioner.

[Doc. 35.] As previously stated, Respondent filed motions for summary judgment [Docs. 29, 38], which are now ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)   (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)   (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the

judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[7] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing

---

[7]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting

*Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.  In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional

claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Murray*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To pass through this actual innocence standard, the petitioner's case must be truly extraordinary. *Murray*, 477 U.S. at 496.

### *Statute of Limitations*

Under the AEDPA, petitioners have one year to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been

newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)–(D). However, the statute tolls the limitations period during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

An application for post-conviction or other collateral review is not properly filed if the application is untimely under state law. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." (alteration in original)). In *Pace*, the United States Supreme Court held that time limits on filing applications for post-conviction or collateral review are filing conditions, no matter the form of the time limit. *Id.* at 417. Therefore, if an application for post-conviction or collateral review is barred by a state statute of limitations, statutory tolling under § 2244(d)(2) does not apply because the application was not properly filed.

The Supreme Court recently recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418). Therefore, "specific circumstances . . . could warrant special treatment in an appropriate case" such that the limitations period is not strictly applied. *Id.* at 2563.

## DISCUSSION

**Procedurally Defaulted Grounds**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). It is a petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Here, Respondent acknowledges Petitioner has exhausted his available state court remedies. [Docs. 30 at 8; 39 at 3.] Respondent argues, however, that Ground Three of the original Petition, some allegations in Ground One of the Amended Petition, and Grounds Two and Three of the Amended Petition are procedurally barred because Petitioner did not properly raise these claims in state court. [Docs. 30 at 13; 39 at 4.] The Court agrees that Ground Three of the original Petition, some allegations in Ground One of the Amended Petition, and Ground Two of the Amended Petition are procedurally barred; however, as discussed below, the Court will assume without deciding that Ground Three of the Amended Petition is not procedurally barred and will address the merits of that ground.

### Ground Three of the Original Petition

In Ground Three of the original Petition, Petitioner argues there is a discrepancy between the time frame of the bank robbery as stated by the solicitor at trial and the time frame alleged by an eyewitness at the PCR hearing. [Doc. 1 at 8.] Petitioner concedes he did not raise this issue on direct appeal or through his PCR action [*id.* at 8–9]; therefore, this issue was not fairly presented to the Supreme Court of South Carolina and is procedurally barred from federal habeas review absent a showing of cause and actual prejudice. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is

procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### Ground One of the Amended Petition

In Ground One of the Amended Petition, Petitioner argues his plea counsel was ineffective for failing to properly investigate, advise, or subject the State's case to an aggressive adversarial testing, specifically arguing plea counsel (a) failed to challenge the eyewitness and video identifications; (b) failed to challenge possible Fourth Amendment violations; (c) failed to develop a defense; (d) failed to prepare as if going to trial; (e) failed to advise Petitioner of what the State would need to prove to get a conviction; (f) failed to determine whether S.C. Code § 17-25-45 could be applied; (g) allowed Petitioner to plea to indictments plea counsel clearly knew Petitioner did not do and which the State lacked the ability to prosecute; (h) failed to explain the significance of a Franks or Denno pre-trial hearing; (i) failed to raise an alibi defense; and (j) failed to raise and bring to Petitioner's attention possible third party guilt and how it could be used as a defense.  [Doc. 35 at 1–2.] Some of these allegations were raised to and addressed by the PCR court,[8] and two of the allegations were presented to the South Carolina Supreme Court in the petition for writ of certiorari.[9]  The two allegations of ineffective assistance of counsel that were presented to

---

[8]The PCR court addressed arguments related to Petitioner's federal habeas allegations that plea counsel failed to challenge the identifications, failed to challenge possible Fourth Amendment violations, failed to develop a defense, failed to prepare as if going to trial, failed to properly advise Petitioner about life without the possibility of parole under S.C. Code § 17-25-45, and failed to raise an alibi defense.  [App. 201–13.]

[9]As previously stated, the two allegations presented to the South Carolina Supreme Court were

1.    Did the PCR judge err in failing to find counsel ineffective for failing to discuss with petitioner the fact that a witness had i[]dentified a third person as the suspect in the armed robberies for which petitioner pled guilty?

the South Carolina Supreme Court—for failure to discuss a third-party identification with Petitioner and failure to explain the possibility of moving to suppress identifications by bank tellers—were also addressed by the PCR court and are not barred from federal habeas review; accordingly, the Court will address these allegations on the merits.[10]  However, because the other allegations were not fairly presented to the South Carolina Supreme Court, they are procedurally barred from federal habeas review absent a showing of cause and actual prejudice.  *See Coleman*, 501 U.S. 722; *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### *Ground Two of the Amended Petition*

In Ground Two of the Amended Petition, Petitioner argues his *Alford* and guilty pleas were neither knowingly, intelligently, nor voluntarily given.  [Doc. 35 at 2–3.]  Although Petitioner raised the issue of his pleas not being knowingly, voluntarily, or intelligently entered in his PCR application, he did not present this issue to the South Carolina Supreme Court in his petition for writ of certiorari.  Because this ground was not fairly presented to the South Carolina Supreme Court, it is procedurally barred from federal habeas review

---

2.      Did the PCR judge err in failing to find counsel ineffective for failing to explain that at trial petitioner could have moved to suppress the identifications of petitioner made by the bank tellers based on the fact that the identifications were made after the news of petitioner's arrest and petitioner's booking photograph had been broadcast on television rendering the identification procedure unduly suggestive?

[Doc. 30-10 at 3.]

[10]The Court notes these two allegations of ineffective assistance of counsel were also raised as Grounds One and Two of the original Petition.  [Doc. 1 at 5–8.]

absent a showing of cause and actual prejudice.[11]  *See Coleman*, 501 U.S. 722; *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### Ground Three of the Amended Petition

In Ground Three of the Amended Petition, Petitioner argues he was denied due process because of prosecutorial misconduct.  [Doc. 35 at 3–4.]  Specifically, Petitioner alleges that, after the prosecuting solicitor was removed from the case because of a previous relationship between the prosecuting solicitor and Petitioner, the solicitor's office, out of vindictiveness, "dropped" all the convenience store robberies on Petitioner and denied Petitioner a preliminary hearing and a motion for change of venue.  [*Id.*]  Although Respondent is correct that the PCR court did not address this issue in its decision and Petitioner did not raise the issue in his PCR appeal, a review of Petitioner's direct appeal record reveals that this issue was included in his pro se brief on direct appeal.  [Doc. 30-5 at 10.]  The Court is not convinced, however, that Petitioner has properly exhausted his state court remedies by including this argument in his direct appeal because the plea transcript indicates no objection was made on this basis at the plea hearing to preserve the issue for appeal.  *See State v. Hoffman*, 462 S.E.2d 311 (S.C. App. 1995) (holding an issue which is not properly preserved cannot be raised for the first time on appeal).  Nonetheless, the Court will assume without deciding that Ground Three of the Amended Petition is not procedurally barred from federal habeas review and will address this ground on the merits.

### Cause and Prejudice

---

[11]Petitioner argues this ground is not procedurally defaulted because Petitioner filed a motion to alter or amend with the PCR court.  [Doc. 49 at 16–17.]  However, "[t]o satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews*, 105 F.3d at 911.  Because Petitioner did not include this ground in his petition for writ of certiorari to the South Carolina Supreme Court, he did not properly exhaust his state court remedies.

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. Here, Petitioner has failed to articulate cause for defaulting on Ground Three of the original Petition, some allegations in Ground One of the Amended Petition, and Ground Two of the Amended Petition. [*See* Doc. 35.] Petitioner filed a petition for writ of certiorari in which these issues could have been raised but were not, even though two issues were properly raised. Thus, Petitioner has failed to demonstrate sufficient cause for failing to raise these grounds to the South Carolina Supreme Court.

**Merits of Remaining Grounds**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this

> Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

### *Ground One of the Original Petition and One Allegation of Ground One of the Amended Petition*[12]

In Ground One of the original Petition and one allegation of Ground One of the Amended Petition, Petitioner argues the PCR court erred by failing to find his plea counsel was ineffective for failing to discuss with Petitioner that a witness had identified a third

---

[12] As previously mentioned, one allegation of ineffective assistance of counsel raised in Ground One of the Amended Petition—with respect to counsel's failure to bring to Petitioner's attention the possibility of third party guilt as a defense—was also raised as Ground One of the original Petition.  Accordingly, the Court addresses these grounds together.

person as the suspect in the convenience store armed robberies for which Petitioner pled guilty. The Court concludes Petitioner is not entitled to habeas corpus relief based on this ground.

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard."[13] *Richter*, 131 S. Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must

---

[13] In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. When there has been a guilty plea, to satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's errors, [the prisoner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Here, the PCR court heard testimony from Faye Mathis ("Mathis") that she recalled seeing a sign with a picture of a person she thought she knew in a convenience store in the Greater Columbia area in February 2004. [App. 116–18.] She called the Sheriff's Department to tell them she thought she recognized the person on the sign, and she took pictures to the Sheriff's Department. [App. 117.] She thought she recognized the person on the sign as someone other than Petitioner. [App. 118.] Law enforcement informed Mathis that her pictures did not match the person on the sign. [App. 117–18.] At the hearing, Mathis did not name the individual she thought was pictured on the sign. With respect to this identification of a third party, plea counsel testified that Mathis had given a statement where she named an individual she believed committed at least one of the convenience store robberies, but she did not give the person's name under oath at the PCR hearing. [App. 159.]

The PCR court found, "Witness Mathis testified that she responded to law enforcement's request for information concerning one or more armed robberies. Witness Mathis testified to nothing of any relevance to this PCR." [App. 204.] The PCR court concluded, "[T]he Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Counsel was not deficient in any manner, nor was Applicant prejudiced by counsel's representation." [App. 211–12.]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable

Supreme Court precedent. First, the PCR court applied the *Strickland* standard, applicable to a guilty plea through *Hill*, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland* and *Hill*. At the PCR hearing, Mathis testified that she thought she recognized someone pictured in a wanted poster for a convenience store robbery. [App. 117.] Although Mathis thought she recognized the individual, the pictures she took to law enforcement did not match the pictures on the poster. [*Id.*] Moreover, her testimony was directed only at the convenience store armed robberies and not at the bank armed robbery or the entering a bank with intent to steal charges, for which Petitioner was also sentenced. [App. 41.] Finally, Mathis's testimony does not touch upon the motivation for the pleas—that Petitioner elected to plead guilty to a package deal rather than face the ten separate charges, each of which carried a potential thirty year sentence. [App. 208; *see* App. 172, 177.] The PCR court had no basis to conclude that counsel's performance was deficient or that Petitioner would not have pled guilty and would have insisted on going to trial based solely on plea counsel's failure to discuss with Petitioner that Mathis identified a third person as the possible suspect in the convenience store armed robberies for which Petitioner pled guilty. Therefore, the Court concludes the PCR court's decision was not an unreasonable application of Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Ground

One of the original Petition and the corresponding allegation of Ground One of the Amended Petition.

### *Ground Two of the Original Petition and One Allegation of Ground One of the Amended Petition*[14]

In Ground Two of the original Petition and one allegation of Ground One of the Amended Petition, Petitioner argues the PCR court erred by failing to find his plea counsel was ineffective for failing explain that Petitioner could have moved to suppress the identifications of Petitioner made by bank tellers based on the fact that the identifications were made after the news of Petitioner's arrest and Petitioner's booking photograph had been broadcast on television. The Court concludes Petitioner is not entitled to habeas corpus relief based on this ground.

Petitioner offered his own testimony at the PCR hearing, stating he believed the identifications were made based on the news report after his arrest. [App. 142.] Plea counsel testified that, had the case gone to trial, he would have attempted to argue that because the identifications were after the news report, the witnesses could have been influenced by the news report when they identified Petitioner. [App. 167.] The PCR court concluded, "[T]he Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Counsel was not deficient in any manner, nor was Applicant prejudiced by counsel's representation." [App. 211–12.]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable

_____

[14] As previously mentioned, one allegation of ineffective assistance of counsel raised in Ground One of the Amended Petition—with respect to failure to challenge the bank tellers' identifications—was also raised as Ground Two of the original Petition. Accordingly, the Court addresses these grounds together.

Supreme Court precedent. First, the PCR court applied the *Strickland* standard, applicable to a guilty plea through *Hill*, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland* and *Hill*. Petitioner has failed to demonstrate he would have pled guilty but for counsel not advising him on the possible challenge to the identification. Other than his own testimony that he believed the identifications were based on the photo of Petitioner in the news report following his arrest, he has offered no evidence that there was any suggestiveness in the identification process. In addition to identifying Petitioner after his arrest, the tellers had previously given descriptions of Petitioner, consistent with his appearance and height. [App. 25.] Moreover, the identifications were not the only evidence to support the State's case. Petitioner concedes the bag of money from the bank robbery was found underneath Petitioner's stove [App. 152], and a witness at the PCR hearing confirmed Petitioner was within a couple of miles of the bank around the time of the robbery [App. 124–28]. Additionally, the PCR court found Petitioner elected to plead guilty to a package deal rather than face the ten separate charges, each of which carried a potential thirty year sentence. [App. 208; *see* App. 172, 177.] Other than Petitioner's conclusory statement, the PCR court had no basis to conclude Petitioner would not have pled guilty and would have insisted on going to trial if he had been advised about the possibility of seeking to suppress the identifications.

Therefore, the Court concludes the PCR court's decision was not an unreasonable application of Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Ground Two of the original Petition and the corresponding allegation of Ground One of the Amended Petition.

### Ground Three of the Amended Petition

In Ground Three of the Amended Petition, Petitioner argues he was denied due process because of prosecutorial misconduct. Specifically, Petitioner alleges that, after the prosecuting solicitor was removed from the case because of a previous relationship between the prosecuting solicitor and Petitioner, the solicitor's office, out of vindictiveness, "dropped" all the convenience store robberies on Petitioner and denied Petitioner a preliminary hearing and a motion for change of venue. The Court concludes Petitioner is not entitled to habeas corpus relief based on the allegations raised in Ground Three of the Amended Petition.

To prevail on a claim of prosecutorial misconduct, a petitioner must show that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The United States Supreme Court has observed, "When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them." *Id.* Here, Petitioner voluntarily pled guilty, and there is no evidence that the prosecutor's decision to charge Petitioner with the convenience store robberies or to deny Petitioner a preliminary hearing or motion to change venue had any impact on Petitioner's decision to plead guilty. Therefore, the Court

concludes Petitioner is not entitled to habeas corpus relief based on Ground Three of the Amended Petition.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motions for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

June 25, 2012
Greenville, South Carolina