UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| Steven A. Sabo, | ) | |
| --- | --- | --- |
| | ) | |
| Petitioner, | ) | Civil Action No.: 8:11-cv-02681-JMC |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Robert M. Stevenson, III, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Steven A. Sabo ("Sabo"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus ("Original Petition") [Dkt. No. 1] and an Amended Petition for Writ of Habeas Corpus ("Amended Petition") [Dkt. No. 35] under 28 U.S.C. § 2254. In his petitions, Sabo contests his guilty plea to armed robbery and entering a bank with intent to steal. He also challenges his guilty pleas to eight counts of armed robbery related to the robberies of various convenience stores pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). Respondent Robert M. Stevenson ("Respondent") moved for summary judgment on Sabo's claims. [Dkt. Nos. 29 and 38].[1] The Magistrate Judge's Report and Recommendation [Dkt. No. 53], filed on June 25, 2012, recommends that Respondent's Motions for Summary Judgment be granted.

Upon review of the Magistrate Judge's Report and Recommendation, the record, the applicable law and both parties' objections, the court accepts the Magistrate Judge's Report and Recommendation as modified herein, grants Respondent's Motions for Summary Judgment, and dismisses Sabo's habeas corpus petition without an evidentiary hearing.

---

[1] Respondent filed his first Motion for Summary Judgment [Dkt. No. 29] in response to Sabo's initial Petition. After Sabo amended his Petition to assert additional grounds for relief, Respondent filed a second Motion for Summary Judgment [Dkt. No. 38].

1

**FACTUAL AND PROCEDURAL BACKGROUND**

Sabo was indicted in April 2004 on nine counts of armed robbery and one count of entering a bank with intent to steal. He pled guilty to all counts and was sentenced to concurrent terms of twenty years. Individually, each of the counts carried potential thirty-year sentences. Sabo unsuccessfully appealed his sentences. He then filed an application in state court for post-conviction relief ("PCR"). The PCR court denied and dismissed Sabo's application with prejudice. Thereafter, Sabo petitioned the Supreme Court of South Carolina for a writ of certiorari which was denied.

In his Original Petition for writ of habeas corpus, Sabo raises three grounds for relief. In Ground One, Sabo contends that his plea counsel was ineffective for failing to discuss a witness identification of a third person as a potential suspect in the convenience store robberies for which Sabo pled guilty. In Ground Two, Sabo complained that his plea counsel was ineffective for not explaining that Sabo could have attempted to suppress the bank tellers' identifications of Sabo because the identifications were made after Sabo's booking photograph was shown on television. In Ground Three, Sabo claims that there were alleged inconsistencies between the solicitor's comments at sentencing and a witness's testimony at the PCR hearing regarding the time frame of the bank robbery for which he pled guilty.

Sabo also filed an Amended Petition for writ of habeas corpus in which he raises additional grounds for relief. The Magistrate Judge succinctly summarized the basis of Sabo's Amended Petition as follows:

> In Ground One of the Amended Petition, Petitioner argues his plea counsel was ineffective for failing to properly investigate, advise, or subject the State's case to an aggressive adversarial testing, specifically arguing plea counsel (a) failed to challenge the eyewitness and video identifications; (b) failed to challenge possible

2

> Fourth Amendment violations; (c) failed to develop a defense; (d) failed to prepare as if going to trial; (e) failed to advise Petitioner of what the State would need to prove to get a conviction; (f) failed to determine whether S.C. Code § 17-25-45 could be applied; (g) allowed Petitioner to plea to indictments plea counsel clearly knew Petitioner did not do and which the State lacked the ability to prosecute; (h) failed to explain the significance of a *Franks* or Denno pre-trial hearing; (i) failed to raise an alibi defense; and (j) failed to raise and bring to Petitioner's attention possible third party guilt and how it could be used as a defense. . . . In Ground Two of the Amended Petition, Petitioner argues his *Alford* and guilty pleas were neither knowingly, intelligently, nor voluntarily given. . . . In Ground Three of the Amended Petition, Petitioner argues he was denied due process because of prosecutorial misconduct. Specifically, Petitioner alleges that, after the prosecuting solicitor was removed from the case because of a previous relationship between the prosecuting solicitor and Petitioner, the solicitor's office, out of vindictiveness, [charged Petitioner with eight] convenience store robberies and denied Petitioner a preliminary hearing and a motion for change of venue.

[Dkt. No. 53, at 24-26].

Respondent filed the instant motions for summary judgment in response to Sabo's petitions.[2]

## LEGAL STANDARDS

The Magistrate Judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

---

[2] The Magistrate Judge's Report and Recommendation contains a more complete recitation of the factual and procedural history of this case. *See* [Dkt. No. 35, at 2-12]. The court incorporates the Magistrate Judge's recitation of the facts herein by reference.

Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the district judge accepts the recommendation. *See United States v. Schronce*, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Magistrate Judge's Report and Recommendation, this court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

A federal court's review of a state prisoner's application for a writ of habeas corpus is limited by 28 U.S.C. § 2254(d). The statute provides that

> [the writ] shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In reviewing a habeas corpus petition, the federal court gives deference to the state court's rulings. *See Rice v. Collins*, 546 U.S. 333, 341-42 (2006) (finding that even if "[r]easonable minds reviewing the record might disagree about [the finding in question], on habeas review that does not suffice to supersede the trial court's . . . determination"). The court will not disturb the state court findings unless the district court determines that the state court unreasonably applied clearly established federal law. *Williams v. Taylor*, 529 U.S. 362, 405, 409 (2000). Further, the state court's factual findings are entitled to a presumption of correctness, which the state prisoner must rebut by clear and convincing evidence. *See* § 2254(e)(1). Moreover, "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Cagle v. Branker*, 520

F.3d 320, 324 (4th Cir. 2008) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)); *Buckner v. Polk*, 453 F.3d 195, 204 n.8 (4th Cir. 2006) (The task of a reviewing court in habeas corpus "is not to decide the credibility issue *de novo* but to determine whether [the state prisoner] has produced clear and convincing evidence that the [state] court's resolution of that issue was incorrect").

However, when a state prisoner brings a habeas petition in federal court alleging claims that were not properly brought in state court, the federal court is procedurally barred from hearing those claims. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). A habeas petitioner may overcome a procedural default by proving both "'cause' for noncompliance with the state rule" and "actual prejudice resulting from the alleged constitutional violation." *Id.* at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). "Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 753(1991)) (internal quotation marks omitted) (alterations in original). "To establish actual prejudice, the petitioner 'must show not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions.'" *Farabee v. Johnson*, 129 F. App'x 799, 802 (4th Cir. 2005) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)) (alterations in original).

## DISCUSSION

**Procedural Default**

In the Report, the Magistrate Judge found that Ground Three of the original Petition, some allegations in Ground One of the Amended Petition, and Ground Two of the Amended

Petition are procedurally barred from review by this court. Sabo objects to the Magistrate Judge's finding of procedural default. Specifically, Sabo contends that the Magistrate Judge overlooked the United States Supreme Court's recent decision in *Martinez v. Ryan,* 132 S. Ct. 1309 (2012), and that his claims could not be procedurally barred because he received ineffective assistance of counsel on direct appeal and from PCR counsel.

In *Martinez*, the Supreme Court held that a habeas corpus petitioner asserting claims for ineffective assistance of counsel could demonstrate sufficient cause to excuse a procedural default upon a showing that counsel in the initial-review collateral proceeding was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 686 (1984), in failing to raise a claim that should have been raised. *See Martinez*, 132 S.Ct. at 1318 (internal citations omitted). To demonstrate cause under *Martinez*, the petitioner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* (internal citations omitted).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time." *Id.* at 689. *See also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("[E]ven if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of

hindsight"). Further, "the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To meet the prejudice requirement on review of a guilty plea, the "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, Sabo was charged with and pled guilty to nine counts of armed robbery and one count of entering a bank with intent to steal. The record reveals that there was substantial evidence of Sabo's involvement in the bank robbery. Most significantly, the bag of money from the robbery was found underneath Sabo's stove. Additionally, three bank tellers identified him as the perpetrator. Sabo asserts that he would not have pled guilty to the bank robbery had he received effective assistance of counsel and, specifically, had he known that he could have moved to suppress the teller identifications. Sabo's counsel admitted that he was prepared to challenge the identifications had Sabo elected to go to trial. However, Sabo had no evidence that the identifications were influenced by media coverage of his arrest. While the identifications were made after Sabo's arrest, each of the tellers independently identified Sabo, and all had given descriptions immediately after the robbery that were consistent with his appearance and height. It is highly unlikely that a suppression motion would have been successful. Moreover, Sabo does not challenge the officer's discovery of the money from the robbery under Sabo's stove. Based on this record, the court is not convinced that Sabo would not have pled guilty to the bank robbery.

Sabo further contends that he would not have pled guilty to the eight counts of armed robbery of various convenience stores had counsel informed him of the existence of a "witness" who had identified another person as the potential culprit in one of the convenience store

robberies. The alleged witness was not present during any of the robberies. She merely testified at Sabo's PCR hearing that she contacted the local sheriff's office after seeing a poster in a convenience store and informed them that she believed she recognized the person sought on the poster. She further testified that after providing photographs of the person she believed she recognized from the posters, the sheriff's office informed her that the photographs did not match. The witness also described the person she knew as Korean, with an appearance of tanned skin, who wore glasses and had long black hair. This description was inconsistent with the description of the robbery suspect as a white male. The witness also made statements during the PCR hearing which were inconsistent with the statements she gave investigating officers. She testified at the PCR hearing that the person she identified did not have a vehicle, but she told the investigating officers that he drove "a white pickup and blue in color midsized vehicle."

Although Sabo claims that this information would have affected his decision to plead guilty, the record reveals that there were several victims of the convenience store robberies who identified Sabo from photographic lineups. Sabo has not made any claims in the instant habeas petitions challenging the propriety of these eye-witness identifications. Therefore, given the unreliability of this disputed witness's alternative identification, it is not probable that knowledge of her potential third party identification would have made any difference in Sabo's decision to plead guilty to the convenience store robberies.

Moreover, as noted by the Magistrate Judge, Sabo elected to plead guilty to a package deal rather than face the ten separate charges, each of which carried a potential thirty-year sentence. Sabo received a sentence of twenty-years imprisonment on each charge, but the sentences are concurrent. After review of the record in this case, the court finds that Sabo has failed to demonstrate any prejudice as a result of counsel's alleged errors. Because the court

8

finds that Sabo has failed to demonstrate the requisite prejudice to prevail on his claims of ineffective assistance of counsel, the court need not address whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697 (noting that the "court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

Here, Sabo has failed to demonstrate that the underlying ineffective-assistance-of-trial-counsel claims have merit. Accordingly, Sabo cannot show cause to excuse his procedural defaults under *Martinez*.

**Prosecutorial Misconduct**

Sabo also objects to the Magistrate Judge's recommendation that the court reject Sabo's claim that he was denied due process because of prosecutorial misconduct. Sabo alleges that, after one of the prosecuting attorneys was removed from the case because Sabo had previously engaged in a relationship with her which ended badly, the solicitor's office maliciously charged him with the convenience store robberies in addition to the charges arising from bank robbery, denied him a preliminary hearing, and denied a motion to transfer venue.

"To prevail on a claim of prosecutorial misconduct, a defendant must show (1) that the prosecutor's remarks and conduct were, in fact, improper and (2) that such remarks or conduct prejudiced the defendant to such an extent as to deprive the defendant of a fair trial." *United States v. Allen*, 491 F.3d 178, 190 (4th Cir. 2007) (internal citations omitted). The Magistrate Judge concluded that Sabo's voluntary plea was not impacted by the solicitor's conduct. Additionally, although Sabo complains that the Magistrate Judge applied the wrong standard, he offers no alternative standard applicable in this case. The court agrees with the Magistrate Judge's recommendation and further finds that Sabo has not complained of any prosecutorial

conduct that was actually improper. Accordingly, the court finds this objection to be without merit.

**Respondent's Objection**

Respondent objects to the Magistrate Judge's decision to refrain from deciding whether Sabo's claim for prosecutorial misconduct is procedurally barred. The Magistrate Judge concluded, on the merits, that the issue of prosecutorial misconduct did not affect Sabo's decision to plead guilty.

As with the issues discussed above, Sabo contends that the issue of prosecutorial misconduct should not be procedurally barred because he received ineffective assistance of counsel during his direct appeal and through the PCR process. Because the court has determined that the underlying claim has no merit, the court agrees with the Magistrate Judge that it is unnecessary to determine whether Sabo's claim is procedurally barred. Therefore, the court declines to sustain Respondent's objection.

## CONCLUSION

For the foregoing reasons, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation [Dkt. No. 53] as modified herein, **GRANTS** Respondent's Motions for Summary Judgment [Dkt. Nos. 29 and 38], and **DISMISSES** Sabo's petitions for writ of habeas corpus without an evidentiary hearing.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

August 28, 2012
Greenville, South Carolina